UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------x
BRIAN O'KEITH JONES,

               Plaintiff,

       -against-

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.
--------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 21-CV-350 (FB)

*Appearances:*
*For the Plaintiff:*
CHRISTOPHER JAMES BOWES
54 Cobblestone Drive
Shoreham, New York 11786

*For the Defendants:*
JOHANNY SANTANA
Office of the General Counsel
Social Security Administration
6401 Security Boulevard
Baltimore, Maryland 21235

**BLOCK, Senior District Judge:**

Brian O'Keith Jones seeks judicial review of the decision of the

Commissioner of Social Security ("Commissioner") denying his application for

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

Both parties move for judgment on the pleadings. For the following reasons,

Jones's motion is granted and the Commissioner's is denied. The matter is

remanded for further proceedings.

**I**

Jones worked as a youth counselor at a residential treating facility for

troubled youth until 2007, and then as an accounts payable coordinator at the same

facility until March 2013.  He thereafter did some temporary work in accounts

payable.

Proceeding *pro se*, Jones applied for DIB and SSI on November 16, 2016.

He alleged that he has been disabled since December 31, 2015, principally due to a

recurrent ganglion cyst on his right wrist.  In addition, the record reflects that he

has been treated for degenerative disk disease and knee pain.

After Jones's application was denied at the initial level and on

reconsideration, an Administrative Law Judge ("ALJ") heard his claim.  In a

decision dated March 19, 2019, the ALJ found that the ganglion cyst constituted a

severe impairment, but that Jones had the residual functional capacity ("RFC") to

perform light work, except that he was limited to only "occasionally handling with

his right dominant hand."  AR 14.  The ALJ did not consider Jones's complaints of

back and knee pain because "there is no evidence that any limitations have lasted

12 months, or would be expected to last 12 months with proper treatment."  AR 14.

Turning to step four of the Commissioner's familiar five-step evaluation

process, the ALJ—with the assistance of a vocational expert ("VE")—described

Jones's past work as a youth counselor as a "resident supervisor," a job that the

2

Dictionary of Occupational Titles ("DOT") classifies as sedentary.  The VE opined

that someone with Jones's RFC "is able to perform this job as he generally

performed it."  AR 17.  Although the DOT states that a resident supervisor must be

able to perform frequently handling, the ALJ accepted the VE's explanation that,

"in her experience, handling was incidental to the job," and that "if the claimant

could perform frequent handling with the other extremity and only occasional with

the right extremity, in her opinion, the claimed could perform the job as he

normally performed [it]."  AR 17-18.

Based on his step-four finding, the ALJ concluded that Jones was not

disabled and denied his application for benefits.  The Commissioner's Appeals

Council denied review on April 16, 2020, making the ALJ's decision the final

decision of the Commissioner.  Jones timely sought judicial review.

II

In reviewing the Commissioner's decision to deny benefits, the Court must

"conduct a plenary review of the administrative record to determine if there is

substantial evidence, considering the record as a whole, to support the

Commissioner's decision and if the correct legal standards have been applied."

*Rucker v. Kijakazi*, 48 F.4th 86, 90-91 (2d Cir. 2022).  Jones argues that the ALJ

incorrectly applied the relevant standards in two respects.

**A.     Treating Source Opinions**

3

First, Jones argues that the ALJ erred by not requesting opinions from two of his treating physicians. "[I]t is the rule in our circuit that the [social security] ALJ, unlike a judge in a trial, must [on behalf of all claimants] . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Lamay v. Comm'r of Social Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009) (quoting, with alterations, *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999)). When the claimant is proceeding *pro se*, that duty is "heightened" and the ALJ must "adequately protect a *pro se* claimant's rights by ensuring that all of the relevant facts are sufficiently developed and considered." *Moran v. Astrue*, 569 F.3d 108, 113 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).

As part of the duty to develop the record, the regulations in effect at the time of Jones's claim imposed a duty on ALJs to "make every reasonable effort"— defined as two written requests, 10 to 20 days apart—"to help you get medical reports from your own medical sources when you give us permission to request the reports." 20 C.F.R. §§ 404.1512(d), 416.912(d) (2016). Such medical reports were to include "[a] statement about what you can still do despite your impairment(s)." *Id.* §§ 404.1513(b)(6), 416.913(b)(6) (2016). The regulations promised that "we will request" such statements from a claimant's treating sources, but stated that "the lack of the medical source statement will not make the report

4

incomplete." *Id.*[1]

In an unpublished opinion, the Second Circuit noted that the plain text of the regulations "seems to impose on the ALJ a duty to solicit such medical opinions." *Tankisi v. Comm'r of Social Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013).  It further noted, however, that the regulations' caveat meant that an ALJ's decision "would not be defective if he requested opinions from medical sources and the medical sources refused." *Id.* at 33-34.  It then reached a somewhat more sweeping conclusion:

> Taken more broadly, [the regulations] suggest remand is not always required when an ALJ fails in his duty to request opinions, particularly where, as here, the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity.

*Id.* at 34.  On the other hand, the Second Circuit has remanded—again, in an unpublished decision—where the other medical evidence in the record "[did] not shed any light on [the claimant's] residual functional capacity, and the consulting doctors did not personally evaluate [her]." *Guillen v. Berryhill*, 697 F. App'x 107, 108-09 (2d Cir. 2017).  District courts have reasoned that the pronouncements

---

[1]These regulations were extensively revised in 2017.  The current regulations carry forward the generally duty to help a claimant obtain medical evidence, *see* 20 C.F.R. §§ 404.1512(b)(1), 416.912(b)(1), but omit any mention of a specific duty to request statements about what a claimant can do despite his or her impairments, *see id.* §§ 404.1513, 416.913.

from the Second Circuit "dictate[] that remand for failure to develop the record is situational and depends on the 'circumstances of the particular case, the comprehensiveness of the administrative record, and . . . whether an ALJ could reach an informed decision based on the record.'" *Holt v. Colvin*, 2018 WL 1293095, at *7 (D. Conn. Mar. 13, 2018) (quoting *Sanchez v. Colvin*, 2015 WL 736102, at *5-*6 (S.D.N.Y. Feb. 20, 2015)).

Jones focuses on the ALJ's failure to request an opinion from Dr. Roy Kulick, the hand surgeon who treated his ganglion cyst. It would be a very close question whether the Court could remand based solely on that omission because the record included extensive treatment notes from Dr. Kulick, as well as the opinions of two consultative examiners. The ALJ obviously gave serious consideration to that evidence, as he found that Jones was limited to only occasional handling with his right hand.

Fortunately—if that is the right word—the ALJ also neglected to obtain an opinion from Lourdes Figueroa, who treated Jones for his back pain. Nor did he obtain an opinion from Dr. Mitchell Weiser, who diagnosed Jones with tendonitis in his left knee and prescribed physical therapy. Although the record includes some treatment notes from both physicians, there is no opinion evidence from *any* physician regarding the nature or severity of those conditions. Indeed, the lack of such evidence led the ALJ to exclude back and knee pain from consideration on

the ground that Jones had failed to show that either would be expected to last for twelve months.

This was error.  "[I]t is well-settled that the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998).  Thus, where sufficient opinion evidence is lacking, the ALJ's obligation is to obtain it from approved sources, not to fill the gap with his own lay opinion.  Although the issue most often comes up in the context of a claimant's RFC, medical opinion evidence may also be needed to determine the nature and severity of an impairment.  Indeed, the regulations in effect at the time of Jones's claim "mandate[d] that the medical opinion of a claimant's treating physician [was] given controlling weight if it [was] well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).[2]

The issue of an impairment's "severity" includes a "durational component" in that a severe impairment "must have lasted or must be expected to last for a continuous period of at least [twelve] months." *Karen S. v. Comm'r of Social Sec.*,

---

[2]As with the rules for developing the record, the regulations governing consideration of medical evidence were overhauled in 2017.  Under the current rules, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your [treating] sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).

2020 WL 4670911, at *10 (D. Vt. Aug. 11, 2020) (quoting 20 C.F.R. § 404.1509);

*see also id.* § 416.909.  Rather than solicit opinion evidence from Jones's treating

sources on this issue—evidence which may well have been entitled to controlling

weight—the ALJ simply assumed that Jones's back and knee pain would resolve.

This requires remand for the ALJ to seek *medical* opinions regarding the expected

duration of those impairments.  In addition, remand will give the ALJ an

opportunity to seek an opinion from Dr. Kulick regarding the limitations imposed

by Jones's wrist impairment.

**B.     Job Description**

Second, Jones argues that the ALJ erred in finding him capable of

performing his past work as a "youth counselor."  That error stems from the VE's

use of the job description for a "resident supervisor," a job that Jones claims is

very different than the job he performed.

At step four, "the ALJ must make a specific and substantial inquiry into the

relevant physical and mental demands associated with the claimant's past work,

and compare these demands to the claimant's residual capabilities."  *Kerulo v.*

*Apfel*, 1999 WL 813350, at *8 (S.D.N.Y. Oct. 7, 1999); *see also Donato v. Sec'y of*

*Dep't of Health & Hum. Servs.*, 721 F.2d 414, 419 (2d Cir. 1983) (holding that

heightening duty to develop record in *pro se* case required ALJ to "inquire[]

further into the nature and extent of the physical exertion required of [claimant] by

8

her former job, the number of hours she worked each day, the length of time she

stood for any one period, the distance she would be required to walk in commuting

to work, and the like"). "The claimant is the primary source for vocational

documentation, and statements by the claimant regarding past work are generally

sufficient for determining the skill level; exertional demands and nonexertional

demands of such work." SSR 82-62, 1982 WL 31386, at *3 (S.S.A. 1982).

Here, by contrast, the ALJ relied principally on the VE's testimony. As

Jones persuasively argues, her description substantially varied from his. She

testified that "most of that job is observation." AR 45. She acknowledged that the

job might require handling "when they're dealing with [residents]," but didn't

believe that "they'd have to do that more than on an occasional basis." AR 45.

Jones, on the other hand, testified that his job was "very active," that "sometimes

you had to break up fights." AR 41. He specifically distinguished his job from a

resident supervisor, explaining that "a supervisor supervised the staff [whereas] the

youth counselor was actually more, you know, hands on, and we would report to

the supervisor." AR 48.

This is not to say that the ALJ was wrong to consider the VE's testimony.

But the duty to conduct a "specific and substantial inquiry" into his prior work

necessarily implies that the inquiry would relate to the job he actually performed.

Jones was, at the very least, entitled to an explanation why the ALJ did not accept

9

his description of the job's demands.  This, too, requires remand.

### III

Since the record does not conclusively establish that Jones is disabled, the Court must remand for further proceedings.  *See Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 2000) ("[A] remand for further proceedings is the appropriate remedy when an erroneous step four determination has precluded any analysis under step five.").  It would be remiss, however, if it did not point out that Jones first applied for DIB and SSI more than seven years ago.  This delay represents an egregious failure of the administrative system—and, regrettably, the court system—to timely address his claim.

The Second Circuit is aware of the "often painfully slow process by which disability determinations are made, and that a remand for further evidentiary proceedings (and the possibility of further appeal) could result in substantial, additional delay."  *See Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005) (cleaned up).  In *Butts*, it approved time limits in cases that have reach step five of the process.  *See* 416 F.3d at 106; district courts have imposed similar time limits because of errors at steps one through four.  *See, e.g.*, *Murphy v. Saul*, 2021 WL 1318044, at *1 (E.D.N.Y. Apr. 8, 2021) (time limits for determining claimant's onset date); *Smith v. Saul*, 2019 WL 2537297, at *7 (W.D.N.Y. June 20, 2019) (time limits for determining

claim based on new list of impairments at step two); *Dambrowski v. Astrue*, 590 F.

Supp. 2d 579, 588 (S.D.N.Y. 2008) (time limits for determining whether claimant

had a listed impairment at step three); *Catsigiannis v. Astrue*, 2013 WL 2445046,

at \*5 (E.D.N.Y. June 4, 2013) (time limits for determining claimant's RFC).

Accordingly, Jones' motion for judgment on the pleadings is granted and the

Commissioner's motion is denied.  The case is remanded for further proceedings.

On remand, the ALJ shall (1) seek medical opinions from Jones's treating sources

and (2) reassess the requirements of his previous job as a youth counselor,

identifying and explaining his resolution of any discrepancies between Jones's

testimony and any other evidence on that issue.  The ALJ shall complete the

proceedings on remand within 60 days of the date of this Memorandum and Order;

if the ALJ's decision on remand is to deny benefits, the Commissioner's final

decision must be rendered within 60 days of an appeal of the ALJ's decision.

**SO ORDERED.**

_/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
February 23, 2024

11